**STATE of Missouri, Respondent,**

v.

**Melvin Sylvester OWENS, Appellant.**

**No. 56227.**

Supreme Court of Missouri,
Division No. 1.

Nov. 13, 1972.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

J. Arnot Hill, Hill & McMullin, Kansas City, for appellant.

BARDGETT, Judge.

Appellant Melvin Sylvester Owens was tried and convicted by a jury of murder in the first degree. The jury assessed punishment at life imprisonment and the court entered judgment and sentence in accordance with the jury verdict. Owens appeals. This court has jurisdiction. Art. V, § 3, Const. of Mo. 1945, as amended, V.A.M.S. Garrett v. State, Mo., 481 S.W. 2d 225.

The sufficiency of the evidence is not questioned. Under the state's evidence the jury could find that about midnight on October 30, 1969, appellant and four others, Ronnell Wheeler, George Mayfield, Roscoe

Ford, and Raymond Florio, went to Johnny's Restaurant in Kansas City, Missouri, in Wheeler's car. When they arrived, one of the five suggested they rob the place. Florio went into the restaurant and when he came back out in about ten minutes informed the others that there were only two people inside. Florio and Wheeler remained in the car while Mayfield, Ford, and Owens went toward the restaurant. Mayfield and Owens had pistols and Ford had a sawed-off shotgun.

Two of the three went inside the restaurant and the third, Owens, remained outside. The two inside held up the proprietor and several shots were fired. The proprietor was killed and a customer, who helped the proprietor from time to time, was injured. This customer, one Emil Thomas, was shot in the hand by the person outside the restaurant and, after the robbers took the money from the cash register, one of them fired a shot at Thomas injuring him in the head or neck.

Appellant testified that he had been drinking for several hours prior to the robbery and was thoroughly intoxicated. He testified that he fell asleep in a pool hall and woke up about 10:00 or 11:00 p. m. at a time when Florio, Ford, and Mayfield were leaving and one of them said they were going to pick up some money that was owed to one of them. Appellant wanted to and did go along in the car. Appellant fell asleep in the car and when he woke up the car was stopped and the others were getting out. Appellant wanted to go with them but Florio objected saying that appellant was "too drunk to go". Appellant insisted he was not too drunk and eventually appellant did go with Mayfield and Ford. According to appellant he did not know there was to be a robbery but thought they were going to collect a debt. Mayfield put a pistol in appellant's pocket. Appellant stayed on the outside of the store just waiting for them to come out. Appellant heard three or four shots fired inside the restaurant and he "jumped forward and turned and pulled the gun and I shot and it went off."

Detective Brown of the Kansas City, Kansas Police Department, arrested appellant in Kansas City, Kansas, on November 21, 1969, about 4:00 p. m. and brought appellant to the Kansas City, Kansas Police Dept. Prior to this arrest the Metro Squad, consisting of police officers from Kansas City, Missouri, and Kansas City, Kansas, and other surrounding municipalities had been working on the case. Chief of Police Boston Daniels of the Kansas City, Kansas Police Department arrested Florio, one of the robbers, between 8:00 and 9:30 a. m. on November 21, 1969, and Florio told the police about the robbery and shooting and about appellant's participation. Chief Daniels attempted to locate and arrest appellant immediately following Florio's statement but was not successful. Chief Daniels then told Detective Brown to arrest appellant for investigation of the homicide. Brown then arrested appellant for investigation of the murder of the proprietor of Johnny's Restaurant, John Harsh, without a warrant. The arrest record stated that appellant was arrested for vagrancy and investigation of murder. The only information Detective Brown had relating to appellant was that Chief Daniels told Brown to go to a particular address and arrest Melvin Owens in connection with the homicide that occurred in Kansas City, Mo. Brown carred out the order. Subsequently appellant gave a confession. Prior to trial appellant filed a motion to suppress the confession. The court held an evidentiary hearing and overruled the motion to suppress. During the trial the state offered the confession in evidence and appellant's attorney did not object to the admission of the confession. The confession was then read to the jury.

Appellant's first point is that the court erred in failing to suppress the confession on the grounds that:

a) there was no probable cause for appellant's arrest and therefore the confession is inadmissible as being the fruit of an unlawful arrest, and

b) the court failed to make a finding beyond a reasonable doubt that appellant was

advised of his rights or that the confession was freely and voluntarily made after being advised of his rights.

Appellant relies on Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, in support of his position that a confession given following an illegal arrest is inadmissible in evidence. It would serve no useful purpose to again review *Wong Sun*. Suffice it to say that it is not correct to say that every confession following an illegal arrest is, per se, inadmissible. See State v. Fair, Mo., 467 S.W.2d 938. In the instant case there was probable cause to arrest appellant in connection with the robbery and murder of John Harsh. Prior to the arrest one of the participants told Chief Daniels that appellant participated in the robbery and murder. The fact that Chief Daniels did not personally arrest appellant nor tell Detective Brown all of the information he had received is not controlling. Detective Brown was following Chief Daniels' direct orders to arrest appellant for the homicide and Chief Daniels had probable cause to issue that arrest order. The arrest was lawful.

The trial court did not make a specific finding that defendant was advised of his constitutional rights nor did it specifically find that the confession was freely and voluntarily given at the conclusion of the hearing on the motion to suppress the confession. The court merely overruled the motion to suppress. There is no complaint that the court failed to hold a full hearing on the motion to suppress as was the situation in State v. Gower, Mo., 418 S.W.2d 10. In the instant case a full hearing was afforded and appellant did not offer any evidence. All of the evidence at that hearing was that appellant had been fully advised of his rights prior to giving the confession.

At the conclusion of the hearing on the motion to suppress, the court sought to clarify appellant's position by asking appellant the following: "This is a Motion to Suppress the statement of this defendant on the grounds, I gather from Mr. Sundeen, on the question that they had no right to arrest this man in the state of Kansas without a warrant, the arrest was an illegal arrest; and therefore, whatever he did while he was under arrest was illegal and the evidence should be suppressed, is that right?" Appellant's attorney replied, "Yes, Your Honor, that is correct." The court thereafter overruled the motion to suppress. No objection to the content of the court's ruling was made nor were any specific findings requested. Furthermore, appellant stated during the trial he had no objection to the admission into evidence of the confession. The point is overruled.

Appellant's second and fourth points are directed to instruction No. 3 which was the principal instruction submitting murder in the first degree under the felony-murder rule to the jury.

The appellant complains that (1) the instruction was erroneous because it failed to define the terms "wilfully, knowingly, deliberation, malice aforethought and premeditation," and (2) the instruction was erroneous because it failed to require a jury finding that appellant "intentionally aided or abetted in the commission of the crime."

The instruction did not use the words wilfully, knowingly, deliberation, malice aforethought or premeditation at all. The instruction required a finding beyond a reasonable doubt that there existed an agreement or understanding between appellant and others to aid and assist each other in the commission of the robbery; that in pursuance and execution of the robbery an assault was made on John H. Harsh with a shotgun and that Harsh died as a result of being shot; that appellant was then and there present, aiding, abetting or assisting in the commission of the robbery before the jury could find appellant guilty of murder in the first degree. In addition the term "robbery" was defined in instruction No. 3.

The court also instructed the jury that, if they did not believe from the evidence beyond a reasonable doubt that appellant had agreed with others to aid and assist in the robbery and that appellant was present, aiding, abetting, or assisting in the robbery, the jury must acquit the appellant. Additionally the jury was instructed that the mere presence of a person at the time and place of the commission of a crime is not sufficient to justify a finding that he was in any manner responsible for the commission of such crime but that, "before such person can be found in any manner responsible for the commission of such crime, the evidence in the case must show, beyond a reasonable doubt, not only that such person was actually present at the commission of such crime, but also that such person knew of the felonious purpose and intent on the part of the person or persons actually commiting the crime, and that he then and there was knowingly and intentionally aiding and abeting [sic], assisting or encouraging the person or persons committing the crime in the commission of the same."

In State v. Phillips, Mo., 299 S.W.2d 431, the court considered an instruction that informed the jury that if the homicide was committed while defendant was perpetrating a robbery then such attempt to perpetrate a robbery stands in lieu of deliberation and premeditation "as hereinbefore defined." The reference in the instruction to deliberation and premeditation was unnecessary to the submission under the felony-murder rule. This is demonstrated by the instruction itself, for after informing the jury of those elements then the instruction actually eliminates them as separate elements by stating that the attempt to commit the robbery stands in lieu of those elements.

Under Missouri law, a homicide committed in the perpetration or attempt to perpetrate certain felonies—including robbery—is murder in the first degree. The felonious intent in such cases occurs with respect to the *robbery* and it is not neces-

sary that a separate intent to kill exists in order to convict of first-degree murder in such instances.

The same reasoning applies to the terms wilfully, intentionally, knowingly, and malice aforethought when the proof justifies and the cause is submitted under the felony-murder portion of § 559.010, V. A.M.S.

The instruction complained of did require a finding that appellant agreed with others to aid and assist in the commission of the robbery; that the homicide occurred in pursuance and execution of that robbery; and that appellant was then and there present aiding, abetting, or assisting in that robbery. Instruction 3 when read together with the other instructions in the case makes it perfectly clear to the jury that before appellant could be convicted of murder in the first degree it was essential that he have intentionally and knowingly participated or assisted in the robbery knowing of the felonious intent to commit the robbery on the part of those whom he had agreed to assist in the commission of the robbery. The court has reviewed the twelve cases cited by appellant in support of his point two. Eight of these cases involved convictions for assault with intent to rob, kill, or do great bodily harm, while three deal with convictions for second-degree murder where there was no other felony involved. The remaining case dealt with murder first degree in common form and not felony murder. None of these cases support appellant here as this case is one premised on the felony-murder provision of § 559.010, V.A.M.S. The point is overruled.

Appellant also argues that instruction No. 3 was defective in that it constituted a material and fatal variance from the information. The information charged murder in the first degree in common form and alleged all the classical elements of that offense. Additionally it alleged that appellant and others while participating in a robbery made an assault upon Harsh with

a gun and killed him. The information actually charged murder in the first degree in common form as well as felony murder.

■ In instances where the information charges murder in the first degree in common form, it is permissible to prove and submit felony murder. State v. Phillips, Mo., 299 S.W.2d 431; State v. Sykes, Mo., 436 S.W.2d 32; State v. Stancliff, Mo., 467 S.W.2d 26.

■ Appellant also argues that the main instruction, No. 3, permitted a finding of guilty of murder in the first degree merely upon the finding that defendant and others made an assault upon John Harsh, and that this also constitutes a material and fatal variance from the information. The contention is without merit. While the instruction did use the word "assault" in connection with the shooting of Harsh, it was a word used merely to describe the fact of the shooting and not as a separate or different crime, such as assault with intent to kill or do great bodily harm. This is clearly evidenced from the other portion of the instruction which required the essential findings that a robbery was being perpetrated and that the assault (shooting) of John Harsh occurred in pursuance and in execution of that robbery.

■ Appellant relies upon State v. Grebe, Mo., 461 S.W.2d 265, in support of his position that instruction No. 3 was erroneous in failing to require a finding that appellant "intentionally aided or abetted in the commission of the crime". As indicated above, the instructions given in this case, when read together, did require the jury to find that appellant knowingly and intentionally agreed with others to assist in and did assist in the commission of the robbery. In State v. Grebe, supra, there was no alleged agreement before the stabbing took place. In the instant case it was the prior agreement to knowingly assist in the robbery and the actual assistance that satisfied the requirement of intent—the el-

ement found lacking in *Grebe.* Appellant's points with respect to instruction No. 3 are overruled.

Next appellant contends the court erred in failing to give instructions A and B offered by appellant on the grounds that instruction A conversed the element of wilfulness as to the participation by appellant in the robbery, and instruction B conversed the element of knowing participation in the robbery by appellant. Appellant further argues that he was entitled to these instructions because of his evidence of intoxication.

The substance of instructions A and B was covered by the court's instruction No. 3 summarized above, particularly that portion of the court's instruction which told the jury that they must acquit appellant if the jury failed to find beyond a reasonable doubt that there was an agreement between appellant and others to aid and assist each other in the commission of the robbery and that appellant was present and aided, abetted, or assisted in the robbery. The concept that the participation in the robbery must be an intentional, wilful, and knowing act of appellant was further emphasized by other instructions given by the court and referred to above.

■ Appellant argues that he was entitled to have instructions A and B given because of his evidence of intoxication. The import of the contention is that voluntary intoxication mitigates or negates wilful and knowing participation in the robbery. The point is without merit. In Missouri the rule is that voluntary intoxication does not excuse nor mitigate the offense. State v. Clevenger, 156 Mo. 190, 56 S.W. 1078. This rule has been consistently followed. See West Mo.Dig.Crim.Law, Key Nos. 53, 54, 55, 774. The point is overruled.

The judgment is affirmed.

All of the Judges concur.